# Lawrence County, Appellant, *v.* Horner, Treasurer.

*Case-stated—What is not taken to exist—Practice, C. P.*

1. In a case-stated, whatever is not distinctly and expressly agreed upon and set forth as admitted, must be taken not to exist.

*Public officers—Compensation—Statutes—Construction—Rule of reason—Constitutional objection—Collection of taxes — Contemporary interpretation—Acts of April 15, 1834, P. L. 509, and April 3, 1851, P. L. 317.*

2. The amount of compensation to be paid public officials is purely a legislative question, which the courts cannot review, except for constitutional objections to the particular statute.

3. An act to reduce the expenses of collecting taxes should not be so construed as to increase them, unless no other conclusion is reasonably possible.

4. Where a statute provides a complete system on specified subjects, all prior acts of assembly in regard thereto are impliedly repealed, so far as respects the persons or places affected by the later statute.

5. The rule of reason founded as it is on the necessity for considering the old law, the mischief and the remedy is a valuable one in endeavoring to ascertain what the legislature intended by the language appearing in a particular statute, but it does not justify a court in reaching a conclusion which defeats that intention as shown by the language of the statute; it is the court's duty to interpret, not to legislate.

6. The mere fact that public officials have claimed or received unlawful allowances during a period of years, without objection being made by those whose duty it was to oppose them if improper, does not justify future unlawful allowances of the same kind.

7. In cases of doubtful legislation, either because of the ambiguity of expression in a single act, or because of obscurity or inconsistency arising from several acts on the same subject, contemporary interpretation is always significant as to the true meaning,

and the courts will be slow to adopt another, even though they might not, on a perusal of the act or acts, be inclined to concur in the contemporary interpretation; but this rule has no applicability where the statutes are unambiguous and reasonably capable of only one interpretation.

Submitted October 6, 1924. Appeal, No. 39, Oct. T., 1924, by plaintiff, from judgment of C. P. Lawrence Co., June T., 1923, No. 19, for defendant on case-stated, in suit of Lawrence County v. C. Lee Horner, County Treasurer. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Case-stated to determine whether defendant was entitled to certain commissions as county treasurer. Before EMORY, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant. Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*Wylie McCaslin,* for appellant.

*Cunningham & Graham* and *Chas. Matthews, Jr.,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, November 24, 1924:

When settling the 1922 account of defendant, as county treasurer, the auditors of the county surcharged him with the sum of $4,471.75 (later reduced by agreement to $4,437.37) which it is claimed he improperly allowed as compensation to those appointed to collect the taxes of that year. Of this latter sum, $4,143.97 was for commissions on collections actually made, and $293.40 was for commissions on taxes not collected, because the taxpayers had been exonerated from the payments. Defendant appealed to the court below; the parties agreed upon a case-stated; the decision was in

favor of defendant as to both sums, and the county prosecutes the present appeal.

By the case-stated, it appears that the tax collectors had added a penalty of five per cent to the face of such of the tax claims, placed in their hands for collection, as had not been paid within thirty days after August 1st, and had rightfully retained this percentage for their own use. The $4,143.97 is, however, an additional allowance of five per cent upon the same claims, the collectors thus received ten per cent for collecting those items. The case-stated also contains the customary recitative clauses; refers to the several acts of assembly bearing on the subject; alleges a usage of permitting such allowances; specifies what judgment shall be entered in the event the court shall be of opinion that defendant was entitled to credits for one, or both, or neither of said sums; and reserves the right of appeal. Two questions arise: (1) Do the applicable statutes authorize such allowances? and (2) If they do not, does the alleged usage nevertheless require their approval?

Admittedly the first of these questions does not apply to the item of $293.40, for neither the court below, nor the appellee, has been able to find any statutory justification for it. Our examination has been equally fruitless. So far as concerns the allowance of the $4,143.97, the answer to that first question depends, the court below says, on the construction to be given to the Acts of April 15, 1834, P. L. 509; April 3, 1851, P. L. 317 (extended by the Act of March 27, 1852, P. L. 197, to Lawrence County); and May 6, 1854, P. L. 600; appellant contends that the Act of 1834 is outside the pale.

The last named statute is a general one relating to county and township rates and levies in every county of the State. So far as it bears upon the point under consideration, it requires the county commissioners, after the county taxes shall have been duly assessed, to issue their warrants to the collectors thereof, who shall make demand for payment; if this is not complied with in thirty

days (section 21) they are to "levy such amount by distress and sale of the goods and chattels of such delinquent," and, if sufficient is not realized thereby, "convey him to the jail of the proper county," etc., etc. Section 35 provides the same course for the collection of the township taxes. No specific compensation is allowed the collectors for the performance of any of these services, but, by section 52 of the act, each is "entitled to retain at the final settlement of his duplicate, the sum of five per cent on all moneys by him collected."

The Act of 1851 is entitled "An Act to reduce the expenses of collecting state and county taxes in the County of Venango," etc. It specifies in section 3 that if any taxpayer fails to pay the amount due by him within thirty days after August 1st, the account shall be placed in the hands of a collector, following which, if the taxpayer "shall fail to pay the amount [due] ......within ten days after demand therefor made...... [the collector shall proceed] to levy the same by distress and sale of the goods and chattels of such delinquent......and in such case the constable shall be entitled to retain out of the proceeds of such sale, after first deducting the taxes, the same fees as are now allowed to constables by law for a levy and sale upon a writ of execution." This is the only provision in the statute relating to the compensation of the collectors, but the court below proposes to add to it the five per cent specified in the Act of 1834, supra; that is, by the construction given below, "An Act to reduce the expenses of collecting" taxes is to be made to increase them, by allowing additional compensation to the collectors. We are convinced that the statute was intended to mean just what it says; that the expenses of collecting taxes were to be reduced by allowing compensation only upon the moneys realized by distraint and sale.

The Act of 1854 is entitled a supplement to the Act of 1851, and provides in section 1 that "in case any default of payment of state or county taxes, as provided in sec-

tion third of said act, to which this is a supplement, after the period of thirty days from the first day of August of each year, when the treasurer shall have issued his warrant to a constable or collector appointed, a penalty of five per cent, in addition to taxes assessed, shall and may be made by said constable or collector; which said percentage, the said constable or collector may collect of the defaulting taxpayer, and retain as an additional compensation over and above any amount now allowed by provisions of original act." It will be observed that this stipulates only for "additional compensation over and above any amount allowed" by the Act of 1851; it is not to be additional to that allowed by the Act of 1834, or by the Acts of 1834 and 1851 combined.

Despite the elaborate argument in the opinion below, we see no difficulty in construing the Acts of 1851 and 1854, or either of them, or any reason to violate settled legal principles in order to give unauthorized compensation to appellee. The former statute is a general one so far as relates to the assessment of taxes in the specified county, the correction of the assessments, how, to whom and when the taxes are to be paid, the penalty for failure to pay promptly and the commissions to be paid for collecting them. It follows that, so far as that county is concerned, it impliedly repeals all earlier statutes, dealing with the same subject-matter: Johnston's Est., 33 Pa. 511; Murdoch v. Biery, 269 Pa. 577. If it had not allowed any compensation, we might be justified, perhaps, in groping in the dark and using, as the court below did, the Act of 1834 as the basis to which should be added the "additional compensation" referred to in the Act of 1854. The Act of 1851 does allow compensation, however, under the circumstances specified in it, and hence we are not at liberty to say that the Act of 1854 did not mean what it plainly says, but referred to the Act of 1834, which the legislature did not mention; it is the court's duty to interpret, not to legislate.

The court below undertakes, however, to do this very thing. It says that if the words of the statute are given their plain meaning, as above specified, the tax collectors will not be adequately compensated; hence "the rule of reason" should be applied, and an additional allowance made, upon the supposed authority of the Act of 1834. The rule referred to is a valuable one, founded as it is on the necessity for considering "the old law, the mischief and the remedy," when endeavoring to ascertain the meaning intended by the legislature, but it does not justify a court in projecting itself backward two generations in order to imagine that the legislature could not have meant what it said, because to do so would result in hardship now. The amount of compensation which shall be paid public officials is purely a legislative question; except for constitutional reasons it is not within judicial purview: Wayne County v. Waller, 90 Pa. 99; County of Lehigh v. Semmel, 124 Pa. 358. Probably because of this, the case-stated is wholly silent on the subject, a fact which also excludes the matter from consideration here. "In a case-stated, whatever is not distinctly and expressly agreed upon and set forth as admitted, must be taken not to exist": Berks County v. Pile, 18 Pa. 493, 497; Schuldt v. Reading Trust Co., 270 Pa. 360; Com. v. Megargee Bros., 275 Pa. 12. Moreover, it sounds like sarcasm to say that "the rule of reason" warrants a judicial attempt to reduce the expenses of taxation by increasing them. As already pointed out, they would be augmented if the opinion below is correct as to the intention of the Act of 1851. This would be doubly true if the Act of 1854 is also considered, for, in that event, in the counties where the expenses are supposed to be reduced, two five per cent charges for collection will be proper and, in addition, if a distraint and sale is made, the usual fees allowed to a constable in the case of an execution; whereas in counties in which there is to be no reduction, but one charge of five per cent will be permitted.

No other statute has been brought to our attention, nor have we found any, which warrants any other allowance than as already designated; hence there is no statutory authority justifying the conclusion reached by the court below, and we are thus brought to the final question in the case: Is the allowance of either the $4,143.97 or the $293.40 required because of usage?

The only paragraph in the case-stated, bearing upon this point, is as follows: "It is agreed as a fact that the county treasurers in the County of Lawrence have made allowances to constables and tax collectors of commissions upon the same basis as was done by C. Lee Horner, county treasurer (defendant) in this matter, continuously since 1854." It will be perceived there is no averment that these allowances were ever claimed as a matter of right, by virtue of the construction of any statute supposed to be applicable. Hence, under the authorities already referred to, this point, upon which stress was laid below and here, not being in the case-stated, "must be taken not to exist." It may be assumed, for so the parties in their briefs seem to agree, that since 1854 the county treasurers have made such allowances, that no one objected thereto, and hence that the accounts ultimately became conclusive as to the years covered by them. Reduced to its lowest terms, the question we are asked to decide is, therefore: Is the county estopped from now objecting to these unlawful allowances merely because for sixty-eight years county treasurers made the same kind of illegal claims, and those whose duty it was to object did not do so. Res adjudicata not being in the way, that question answers itself.

Moreover, if it had been admitted that these allowances were made because of contemporaneous and long-continued construction of the applicable statutes, we would still reach the same conclusion. We know of no better statement of the rule here relied on, than the following from Com. v. Paine, 207 Pa. 45, 48: "But in cases of doubtful legislation, either because of the am-

biguity of expression in a single act, or because of obscurity or inconsistency arising from several acts on the same subject, contemporary interpretation is always significant as to the true meaning. If in the opinion of lawyers and the people interested, who lived at the time and were closely affected by the legislation, it had a particular meaning out of several possible ones, courts in later years will be slow to adopt another, even though they might not on a perusal of the acts be inclined to concur in the contemporary interpretation." It will be noticed, however, that the rule only applies where there are ambiguities in and several possible interpretations of the relevant statutes. It has often been thus stated: 25 R. C. L. 1043. The Acts of 1851 and 1854 are not ambiguous, however, nor capable of more than one interpretation, and neither counsel for appellee, nor the court below, have shown that they are. The supposed applicability of "the rule of reason" does not assert any ambiguity in the language used, and hence does not require any additional comment.

The judgment of the court below is reversed, and the record is remitted with directions to enter judgment "for the plaintiff and against the defendant in the sum of $4,437.37."